ETHEL RAYE GILSON, petitioner-respondent,

*v.*

HARRY W. GILSON, defendant-appellant.

[Submitted February term. Decided April 27th, 1933.]

*Mr. Charles F. Black,* for the petitioner-respondent.

*Mr. Herbert Clark Gilson,* for the defendant-appellant.

The opinion of the court was delivered by

WELLS, J.

This is a divorce case in which the wife brought suit based on the grounds of desertion and extreme cruelty and prayed the custody of their children, and that the husband be compelled to support the children and herself.

The extreme cruelty alleged was that the husband made his wife the victim of his violent and ungoverned temper, calling her names and accusing her of unchastity. No physical violence is asserted or proved.

The desertion is alleged to have occurrred in January, 1929, although the parties continued to live under the same roof up to and during the time of the hearing.

The husband denied the charges and counter-claimed, alleging extreme cruelty on the part of the wife, consisting of her neglecting her children and the home and of her refusal to have sexual intercourse with him, commencing June 28th, 1931, and her stating to him that she was in love with another man; that she hated the husband and would kill him if he did anything to her lover, and frequently threatening the husband with physical violence, so that his health became shattered and he was rendered unfit to earn a livelihood, &c.

The case was referred to an advisory master, who recommended a decree dismissing the husband's counter-claim and the granting of an absolute divorce to the wife on the ground of desertion, but awarded the custody of the children to the husband with the right of visitation by the wife, and awarded her alimony of $30 per week and a counsel fee of $450. The husband appeals from all parts of the decree.

The parties were married June 29th, 1919. She was then nineteen years of age and acting as his stenographer. He was thirty-five years old. He was making about $16,000

a year in his business and established the family in a $34,000 home with servants and a liberal allowance to the wife, who had the privilege of drawing on his bank account.

In 1929 the depression overtook him, his income steadily decreased; he lost most, if not all, his savings; his account in his business became overdrawn and he begged his wife to retrench. In May, 1931, she met a Dr. Cooper, a chiropractor and a married man. She seems to have been very much infatuated with him. She attended to buying the furniture of a summer cottage for him and had a key to his office. The husband discovered this and objected to her conduct. In spite of that she continued to meet Cooper. She admitted that Cooper called her at least once a week on the telephone, that she sat in a parked car on more than one occasion with him; that he kissed her and tried to hug her, and while the suit was pending she accompanied him to a Chinese restaurant at night. Four witnesses (some of whom are her own friends) testified that she had admitted she was in love with Cooper, and to one she said that she refused to have any sexual relations with her husband because that would be disloyal to her lover. Her neighbors testified that Dr. Cooper called at her home and remained an hour or more at a time.

The wife claimed that her husband's desertion occurred in January, 1929, when he left her room, removed his clothes to another room and said he would have nothing more to do with her. She testified that since that time he has refused to have sexual intercourse with her, although she invited him to on six occasions.

The husband said they occupied the same room and continued to have sexual intercourse until June 28th, 1931, when she requested him to leave her bed because he had a cold and his cough disturbed her, and that when he sought to return about two weeks later, she refused to permit him to do so, and that since that time she has refused to have sexual intercourse with him.

The petitioner attempted to prove the alleged desertion by separation from bed and cessation of marital relations by

a daughter, who was ten years old at the time of the hearing and who gave very unsatisfactory testimony on the subject of the defendant's occupying a separate room. She said that she knew that he had been sleeping in the guest room for two Christmases. That might be true without carrying it back to 1929 because the hearing was held on May 27th, 1932. The petition was filed January 28th, 1932. The other witness was the mother of the petitioner, who testified to occasional visits to the home at which time she occupied the guest room or slept in another room known as the den, and said that the defendant did not occupy a room with the petitioner, although her testimony was not very definite because she did not seem to know where the defendant slept, and her testimony seemed to depend largely upon which the petitioner told her.

This, petitioner claims, constitutes, under *Haskell* v. *Haskell, 99 N. J. Eq. 399*, competent testimony for the purpose of corroborating her story that defendant had withdrawn from her room.

Assuming, without deciding, that the testimony of the daughter and mother of petitioner was sufficient corroboration of the petitioner's testimony, we think the weight of the testimony strongly favored the defendant that they continued to occupy the same bedroom until June 28th, 1931, as claimed by the husband.

Five witnesses, who had remained overnight at various times at the home of the petitioner and defendant, testified that petitioner and defendant had occupied the same bedroom until June, 1931.

On cross-examination the petitioner admitted that the defendant took her on trips in the summer of 1929 and in 1930 to Canada, the Adirondacks, Syracuse and other places, and that they occupied the same bedrooms on these trips. She also admitted that in 1929, 1930 and 1931, the defendant gave her an automobile, a $650 fur coat, jewelry and Christmas gifts, up to and including Christmas of 1931; that he bought a grand piano to replace an upright at her request, and he continued to allow her to draw on his bank account up until

within two weeks of the hearing. It is difficult to believe that a husband would do these things if he had decided in January, 1929, to "have nothing more to do" with his wife, and to desert her.

The allegations of cruelty on the part of both petitioner and defendant were not sustained.

The husband attempted to support his charge of extreme cruelty by evidence of his wife's refusal of cohabitation from June 28th, 1931, on—and also by threats, and' by evidence of matrimonial discord and unhappiness.

In *Wood* v. *Wood, 97 N. J. Eq. 1,* the chancellor, speaking for the court of chancery, held that the refusal of sexual relations is not cruelty, but is simple desertion; and, as pointed out by the advisory master in his memorandum opinion herein, inasmuch as the refusal of the wife began in June, 1931, it could not have continued for two years prior to the filing of the counter-claim, and therefore, even if proved, would not be available to the husband as the basis for a counter-claim for divorce on the ground of desertion.

As further pointed out by the advisory master, marital discord and unhappiness arising from constant quarreling do not constitute extreme cruelty sufficient to entitle a party to a decree of divorce. *Brinkerhoff* v. *Brinkerhoff, 106 N. J. Eq. 331; Wood* v. *Wood, supra.*

We think the advisory master properly dismissed the husband's counter-claim, but we are of the opinion that the decree entered upon his advice granting a divorce and alimony to the wife was erroneous.

A careful examination of the evidence convinces us that the wife had become weary of her husband, who could no longer keep her in the luxury of their early married life and that she became infatuated with another man, lost her love for her husband and desired to be free of her marital relations. She admitted that she did not care who obtained the divorce and was even willing to give up the children if she could not have them without a fuss.

We are of the opinion that the decree of the court of chancery, granting a divorce to the wife and awarding her alimony and a counsel fee should be reversed.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Trenchard, Parker, Lloyd, Case, Bodine, Donges, Heher, Van Buskirk, Kays, Hetfield, Dear, Wells, Dill, JJ. 14.